

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-16-00208-CR

**EX PARTE** Jose Manuel **ROMO-MORAN**

From the 2nd 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 15-2181-CV
Honorable W.C. Kirkendall, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:        Marialyn Barnard, Justice
                Patricia O. Alvarez, Justice
                Irene Rios, Justice

Delivered and Filed:  February 15, 2017

REVERSED AND REMANDED

This is an appeal from the trial court's denial of appellant Jose Manuel Romo-Moran's application for writ of habeas corpus. On appeal, Romo-Moran raises three issues challenging the trial court's denial. We reverse the trial court's order denying Romo-Moran's application for writ of habeas corpus, grant the request for habeas relief, and remand this matter to the trial court to permit Romo-Moran to withdraw his plea.

### BACKGROUND

Pursuant to a plea agreement, Romo-Moran — a Mexican national who has resided in the United States as an undocumented individual since 2003 — pled guilty to the offense of possession of a controlled substance, cocaine, in an amount less than one gram. The offense is a state jail felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.114(b) (West 2010). Under the agreement,

Romo-Moran's plea was "open" pursuant to section 12.44(b) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 12.44(b) (West 2011) (stating that at request of prosecutor, trial court may authorize prosecutor to prosecute state jail felony as Class A misdemeanor). However, at the plea hearing, and after the trial court admonished Romo-Moran, the trial court asked the State if "open under 12.44(b)" meant the court "may sentence [Romo-Moran] to either a felony or a misdemeanor at the Court's election, or does it mean that the Court may only sentence him to some sentence of a misdemeanor." Both the prosecutor and Romo-Moran's trial counsel advised that "both the felony and misdemeanor range is available to the court." Romo-Moran agreed that this was his understanding as well. Thereafter, the trial court accepted Romo-Moran's plea of guilty and placed him on deferred adjudication for a period of five years and assessed a $500.00 fine, which was not probated. In the written judgment, the offense level was stated as "STATE JAIL FELONY."

Less than four months later, Romo-Moran filed an application for writ of habeas corpus, seeking to withdraw his guilty plea. In the application, Romo-Moran alleged: (1) the trial court failed to follow the plea agreement, thereby rendering an illegal sentence; (2) his plea was not knowingly or voluntarily entered because he was unaware of the immigration consequences that would result from his plea; and (3) his trial counsel failed to properly advise him regarding the immigration consequences of his plea, rendering counsel's assistance ineffective. Romo-Moran stated in his application that if he had been aware of the immigration consequences of his plea, he would not have pled guilty, but would have insisted on going to trial.

The trial court took evidence through written affidavits. In his amended affidavit, Romo-Moran's trial counsel averred he had incorrectly concurred with the State when it advised the trial court that the plea agreement permitted the trial court to sentence Romo-Moran within either "the felony or misdemeanor range." In truth, according to trial counsel's affidavit, the plea agreement had always contemplated that Romo-Moran would plead to a misdemeanor under article 12.44(b).

Trial counsel went on to state in the amended affidavit that the plea negotiations "always contemplated misdemeanor punishment under 12.44(b), as the Defendant was not a citizen of the United States, and this would allow the Defendant the ability to remain in the United States under current immigration laws." Trial counsel concluded by stating that his failure to clarify the terms of the agreement in open court resulted in the trial court sentencing Romo-Moran to terms outside the plea agreement. The State submitted an affidavit confirming trial counsel's contention that the plea agreement was to allow Romo-Moran to plead to a misdemeanor under article 12.44(b).

In addition to the affidavits, the State and Romo-Moran submitted a joint motion in which they agreed Romo-Moran's application should be granted because trial counsel provided ineffective assistance when he advised Romo-Moran that if he pled to a misdemeanor he would be able to remain in the United States, i.e., he would not be subject to deportation. It is undisputed that such advice was erroneous. *See Ex parte Torres*, 483 S.W.3d 35, 44 (Tex. Crim. App. 2016) (recognizing that under 8 U.S.C. § 1227(a)(2)(B) alien convicted of violation of any state law or regulation relating to controlled substance — other than single offense involving possession for own use of thirty grams or less of marijuana — is deportable); *see also* 8 U.S.C. § 1101(a)(48)(A)(ii) (defining conviction as "formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed."); 8 U.S.C. § 1227(a)(2)(B).

In its findings of fact, the trial court agreed Romo-Moran's trial counsel was ineffective because he provided erroneous advice regarding the immigration consequences of a plea to the offense charged. Nevertheless, the trial court denied the application for writ of habeas corpus, finding the sentence was not outside the plea agreement and Romo-Moran was not prejudiced by his trial counsel's actions because by entering a plea he avoided a conviction and state jail time. The trial court found Romo-Moran's chance of success at trial "was virtually nil."

After the trial court denied his application, Romo-Moran perfected this appeal.

## ANALYSIS

On appeal, Romo-Moran argues the trial court erred in denying his application for writ of habeas corpus because: (1) the trial court failed to follow the plea agreement, misinterpreting section 12.44 of the Texas Penal Code; and (2) trial counsel's performance was deficient with regard to his advice on immigration consequences, rendering Romo-Moran's plea involuntary, thereby prejudicing him. In its appellate brief, the State agrees Romo-Moran's trial counsel was ineffective and his actions prejudiced Romo-Moran. The State does not agree the trial court misinterpreted article 12.44(b) or imposed an illegal sentence. We begin our review by addressing the issue upon which Romo-Moran and the State agree — that Romo-Moran was entitled to habeas relief based on ineffective assistance of trial counsel.

### *Standard of Review*

An applicant seeking post-conviction habeas corpus relief must prove his claims by a preponderance of the evidence. *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011); *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002). In an article 11.072 habeas case — a case in which an applicant seeks relief from an order or judgment of conviction ordering community supervision, the trial judge is the sole finder of fact. *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013) (citing TEX. CODE CRIM. PROC. ANN. art. 11.072, §§ 7, 8 (West 2015)); *see* TEX. CODE CRIM. PROC. ANN. art. 11.072, § 1. When we review a trial court's decision denying habeas relief, we view the facts in the light most favorable to the trial court's ruling. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled in part on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007). In our review, we afford almost total deference to the trial court's findings of fact that are supported by the record, especially when the fact findings are based on the credibility and demeanor of a witness. *Ex parte Amezquita*, 223

S.W.3d 363, 367 (Tex. Crim. App. 2006) (quoting *Ex parte White*, 160 S.W.3d 46, 50 (Tex. Crim. App. 2004)). We afford this same deference to the trial court's application of the law to the facts if the application turns on issues of credibility and demeanor. *Peterson*, 117 S.W.3d at 819. In both of these instances, we apply an abuse of discretion standard. *See Ex parte Garcia*, 353 S.W.3d 785, 787–88 (Tex. Crim. App. 2011) (adopting abuse of discretion standard articulated in *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997) (en banc)); *see Ex parte Skelton*, 434 S.W.3d 709, 717 (Tex. App.–San Antonio 2014, pet. ref'd). However, if the resolution of the ultimate issues turns upon the application of the law absent any evaluation of credibility or demeanor, the trial court's decision denying habeas corpus relief is reviewed de novo. *Peterson*, 117 S.W.3d at 819; *see Ex parte Skelton*, 434 S.W.3d at 717.

### *Applicable Law — Ineffective Assistance of Counsel*

To demonstrate he is entitled to post-conviction relief on the basis of ineffective assistance of counsel, an applicant for a post-conviction writ of habeas corpus must demonstrate trial counsel's performance was deficient, i.e., it fell below an objective standard of reasonableness based on prevailing professional norms and the circumstances of the case, and he was prejudiced as a result of counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 693 (1984); *Torres*, 483 S.W.3d at 43. Here, all involved, including the trial court, agree trial counsel's performance was deficient in that he failed to accurately advise Romo-Moran of the immigration consequences of his plea. Trial counsel admitted his belief that a plea to a misdemeanor offense would not subject Romo-Moran to deportation. Moreover, Romo-Moran testified in his affidavit that his trial counsel failed to properly advise him of the immigration consequences of the plea. Thus, the record establishes trial counsel provided inaccurate legal advice regarding immigration consequences of a plea to Romo-Moran. As noted above, an alien convicted of a violation of any state law or regulation relating to controlled substance — other than single offense involving

possession for own use of thirty grams or less of marijuana — is deportable. 8 U.S.C. § 1227(a)(2)(B). Accordingly, under applicable law, even a plea to a misdemeanor drug possession offense — other than a first offense for small amounts of marijuana — subjects the defendant to deportation. *See id.*

Romo-Moran was charged with possession of a controlled substance, cocaine, in an amount of less than one gram, and a conviction of this offense subjected him to deportation. Pursuant to federal law, the imposition of deferred adjudication and the assessment of a fine constituted a "conviction" under federal law. *See* 8 U.S.C. § 1101(a)(48)(A)(ii). The deportation consequences in this case were "truly clear," and therefore, trial counsel's duty to advise Romo-Moran of those consequences was "equally clear." *See Torres*, 483 S.W.3d at 44 (quoting *Padilla v. Kentucky*, 559 U.S. 347, 369 (2010)). Counsel's advice failed to properly warn Romo-Moran of the gravity of the deportation consequences of his plea that made him "subject to automatic deportation." *Id.* at 45. Thus, we agree trial counsel's performance was deficient, falling short of *Padilla's* requirement that trial counsel provide clear and accurate advice regarding the "presumptively mandatory" deportation consequences of his guilty plea. *Id.* We must now determine whether the trial court erred when it determined trial counsel's deficient performance did not prejudice Romo-Moran.

The Texas Court of Criminal Appeals has recently addressed the proper standard for determining prejudice in the context of a collateral challenge to a guilty plea based on ineffective assistance of counsel. *See Torres*, 483 S.W.3d at 46. In *Torres*, the court held the proper standard is the one set forth by the Supreme Court in *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Under *Hill*, an applicant must show that but for counsel's deficient performance, i.e., errors, he would have rejected the plea bargain and pursued a trial on the merits. 474 U.S. at 59; *see Torres*, 483 S.W.3d at 46. As explained by the court in *Torres*:

> [W]e conclude that the prejudice standard that governs . . . is the familiar *Strickland* standard as it applies in the context of a guilty plea, under *Hill*, that asks whether, but for counsel's errors in a plea proceeding, there exists a reasonable probability that the defendant would have rejected the plea bargain and instead pursued a trial.

483 S.W.3d at 47. The court then went on to state that although the *Padilla* court did not directly address the issue of prejudice, it suggested that to obtain relief, an applicant would have to "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Id.* at 48 (quoting *Padilla*, 559 U.S. at 372). In *Torres*, the court of criminal appeals adopted this language from *Padilla* as part of the prejudice standard. *Id.*

The court then noted that in applying the *Padilla* language, courts considered several factors, including the applicant's assertions, the likelihood of his success at trial, the risks the applicant would face at trial, and the trial court's admonishments. *Id.* However, the court cautioned that "it is not dispositive that an applicant show that he would have received a more favorable disposition had he gone to trial." *Id.* (citations omitted). And, importantly, the court recognized that an alien defendant might rationally be more concerned with removal than with prison or jail time. *Id.*; *see Padilla*, 559 U.S. at 368 ("We too have previously recognized that preserving the client's right to remain in the United States may be more important to the [defendant] than any potential jail sentence."). As the court concluded:

> [W]here the totality of the circumstances indicate that a defendant has placed a particular emphasis on the immigration consequences of a plea in deciding whether or not to accept it, this may constitute a circumstance that weighs in favor of a finding of prejudice.

*Torres*, 483 S.W.3d at 48–49 (citing *U.S. v. Rodriguez-Vega*, 797 F.3d 782, 789 (9th Cir. 2015) ("We have found prejudice where a non-citizen demonstrates clearly that she placed a particular emphasis on the immigration consequence of a plea in deciding whether or not to accept it.").

Considering the factors set forth by the *Torres* court, we first recognize the trial court determined Romo-Moran's chances of exoneration at trial were, in his opinion, "virtually nil,"

weighing against a finding of prejudice. *See Torres*, 43 S.W.3d at 48. As to the risks at trial, if Romo-Moran were convicted of a state jail felony — it appearing he had no prior convictions and was not accused of using or exhibiting a deadly weapon — he would face a fine up to $10,000.00 and confinement in a state jail for a term of not more than two years or less than 180 days. *See* TEX. PENAL CODE ANN. § 12.35 (West Supp. 2016). In *Torres*, the applicant faced up to twenty years' confinement for what the court described as "two serious felonies." The undisputed evidence established Romo-Moran's strong ties to the United States — his wife and two children are citizens, he has been here since 2003, and prior to his arrest, he was in the process of obtaining residency. Comparatively, it would have been rational for Romo-Moran, unlike the applicant in *Torres*, to "roll the dice and pursue a trial." *See Torres*, 43 S.W.3d at 49. We therefore find this factor weighs in favor of a finding of prejudice.

Finally, the record shows that in this case — unlike the applicant in *Torres* — Romo-Moran's primary concern was not whether he was convicted or incarcerated, but whether he would be deported. *See id.* at 48, 50. In the affidavit attached to his petition, Romo-Moran specifically averred that if he had known the consequences of his plea, he "would have never agreed to the plea offer." Romo-Moran's trial counsel stated in his affidavit that plea negotiations "always contemplated" a punishment that would permit Romo-Moran to remain in the United States under current immigration laws. Notably, in her affidavit, the prosecutor testified she learned Romo-Moran had two young children in the United States and had no prior felony convictions, prompting her to offer a plea that at the time she and defense counsel believed would permit Romo-Moran to remain in the United States. We hold the evidence from these affidavits establishes that potential immigration consequences were, as the State asserts, "at the heart of the plea negotiations.

It appears the trial court focused its prejudice inquiry on the likelihood that Romo-Moran would have been found guilty at trial, ignoring much of the evidence relating to the deportation

concerns, which is contrary to the admonition by the court in *Torres*. *See id.* at 48. Romo-Moran, unlike the applicant in *Torres*, specifically stated his concern for potential immigration consequences. *See id.* at 49. There is no evidence Romo-Moran was focused on avoiding conviction or incarceration. *See id.* We hold the evidence shows Romo-Moran, his counsel, and the prosecutor placed particular emphasis on the immigration consequences of the plea, which weighs in favor of a finding of prejudice. *See id.* at 48–49.

Given the emphasis on immigration consequences, the evidence of Romo-Moran's strong ties to this country, and the relatively inconsequential punishment he faced if convicted, we hold the trial court erred in concluding there was no reasonable probability that Romo-Moran would have rejected the plea and proceeded to trial if he had been properly advised of the immigration consequences of the plea. *See id.* at 47. In other words, we hold the trial court erred in concluding Romo-Moran was not prejudiced by his trial counsel's deficient performance in this case.

## CONCLUSION

Based on the foregoing, we reverse the trial court's order denying Romo-Moran's application for writ of habeas corpus, grant habeas relief, and remand the matter to the trial court to allow Romo-Moran to withdraw his plea. Given our disposition of Romo-Moran's ineffective assistance of counsel claim, we need not address his other contentions.

Marialyn Barnard, Justice

Do Not Publish